## UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF FLORIDA
#### ORLANDO DIVISION

**DELORES BAILEY,**

          **Plaintiff,**

**-vs-**                                **Case No.  6:04-cv-1751-Orl-22KRS**

**ORANGE COUNTY SCHOOL BOARD,
DR. JOHN EDWARDS, and RONALD
BLOCKER,**

          **Defendants.**
_____

## ORDER

### I.  INTRODUCTION

This cause comes before the Court for consideration of Defendant's, Orange County School Board (OCSB), Motion for Summary Judgment (Doc. 43), filed May 1, 2006, to which Plaintiff, Delores Bailey, has responded (Doc. 49), and Defendant's Motion to Strike Plaintiff's Affidavits in Opposition to OCSB's Motion for Summary Judgment (Doc. 56), filed June 12, 2006, to which Plaintiff has responded (Doc. 57).  After reviewing the motions and memoranda, this Court **GRANTS** Defendant's Motion for Summary Judgment and **GRANTS** Defendant's Motion to Strike.

### II.  BACKGROUND

**A.  Factual Background**

This action arises from alleged violations of Plaintiff's rights under both Title IX of the Education Amendments of 1972, 20 U.S.C. §1681-1688 (Title IX) and 42 U.S.C. §1983. Plaintiff alleges that as a student at Apoka High School (AHS) she started a sexual

relationship with an AHS teacher, Timothy Bridges.  Plaintiff also alleges that Defendant

had notice of Bridges's illicit sexual proclivities through other incidents Bridges was

involved in while an employee of Defendant.

**1. Relationship between Plaintiff and Bridges**

Plaintiff states that her relationship with Bridges started in December 2000.  Dep. of

Bailey at 178.  Plaintiff was sixteen years old.  Plaintiff, after an injury to her eye in

September 2000, was unable to attend classes for the majority of her junior year of high

school.  Plaintiff entered a homebound tutoring program, which was sponsored by

Defendant.  Plaintiff alleges that she was encouraged by the Defendant's teachers to seek

out tutoring.  *Id* at 127.  In late November 2000, Plaintiff sought tutoring at the John H.

Bridges Community Center (Community Center), operated by Defendant, where Bridges

worked teaching a GED program and tutoring.  Dep. of Bailey at 128; 176.  Bridges tutored

Plaintiff in math.  Plaintiff alleges that their relationship began with Bridges flirting with

her.  *Id.* at 192.  Plaintiff contends that her first sexual contact with Bridges occurred in

December 2000 at the Community Center.  *Id.* at 178. Plaintiff alleges that between

December 2000 and May 2001 she and Bridges engaged in sexual activities[1] about ten

times.  *Id*. at 209.

Plaintiff returned to AHS in May of 2001.  Plaintiff contends that in the fall of her

senior year, 2001, she and Bridges had sex at his house between ten and twenty times.  *Id*. at

231.  Plaintiff also claims that, during her senior year, they had sex on AHS property, in the

---

[1]  The term sexual activities includes both oral sex and intercourse.

weight room of the football stadium.  *Id.* at 233.  Plaintiff estimates that they had sex in the

weight room between twenty and thirty times.  *Id.* at 234.  However, in her weight room

estimate Plaintiff included encounters that took place after she had graduated from AHS.

*See id.* at 233.  Plaintiff alleges that during one of these encounters in the weight room,

while Plaintiff was still a student at AHS, Camelia Oliver, a fellow student, saw Plaintiff and

Bridges engaging in sexual activities.  *Id.* at 233, 256-57.  Oliver stated that she never

disclosed what she saw to any OCSB employee or AHS official.  Dep. of Oliver at 21, 40-

41.

Plaintiff graduated from AHS in May 2002.  The week after she graduated she

moved to Tampa where she enrolled in the University of South Florida (USF).  Plaintiff

turned eighteen two months later.  Plaintiff alleges that her relationship with Bridges

continued after graduation from AHS.  Dep. of Bailey at 47.  Plaintiff claims that the

relationship ended in the summer of 2003.  *Id.* at 47-48.

While Plaintiff was a student at AHS, she did not tell anyone about her relationship

with Bridges.  *Id.* at 237.  She thought that no one employed by AHS or OCSB knew about

her relationship with Bridges while she was a student.  *Id.* The parties agree that the first

time Plaintiff alerted Defendant about her relationship with Bridges was in a letter dated

March 15, 2004 (the Letter).  Doc. 58-1 at 6.

Defendant received the Letter on March 22, 2004.  The Letter stated that Plaintiff

and Bridges had engaged in an inappropriate sexual relationship, while Plaintiff was a minor

and a student at AHS.  *Id.* at 5.  Defendant immediately began an investigation.  Defendant

placed Bridges on relief of duty on March 23, 2004.  On April 26, 2004, Bridges resigned

his position as an employee of the Defendant.

Plaintiff alleges that Defendant knew about Plaintiff and Bridges's relationship

before it received the Letter.  Plaintiff states that Mildred Bolden, Plaintiff's aunt and

employee of Defendant, was approached by Dr. Allen, a senior administrator for Defendant,

in the summer of 2003.  Dep. of Bolden at 22.  Bolden states that Dr. Allen told her that Dr.

Allen heard a rumor that Bailey was having an affair with a teacher at AHS.  *Id.*  Dr. Allen

vehemently denies this conversation taking place.  Dep. of Allen at 13.

## 2.  Prior Allegations of Bridges's Sexual Impropriety

In addition to the relationship with the Plaintiff, Plaintiff alleges that Bridges was

involved in several other incidents of sexual impropriety.

### a.  1993 Incidents

On October 21, 1993, while teaching at AHS, Bridges was accused of having made

an inappropriately graphic comment to a female student and having allegedly touched the

breast of another female student the previous school term.  Aff. of Hawco (Doc. 47-2 at 6).

John Hawco from the Employee Relations Department (ERD) handled the complaint.  Doc.

47-2 at 6.  Hawco immediately notified both the Florida Department of Health and

Rehabilitative Services and the Orange County Sheriff's Department about the alleged

misconduct.  *Id.*  On October 22, 1993, Bridges was placed on administrative leave pending

the outcome of the investigation.  *Id.* at 7.

With respect to the sexually graphic comment, Hawco found that the student making

the complaint gave him differing versions of Bridges's comment.  *Id.* at 6.  Hawco also

found that another student, who overheard the conversation, stated that Bridges did not make any sexual graphic comments.  *Id.* at 7.

Regarding the allegation that Bridges touched a female student's breast, Hawco interviewed the student allegedly touched who said that it was an accident for which Bridges immediately apologized.  *Id.* at 7.  Hawco found that the incident arose from Bridges's belief that the student was violating the dress code.  Bridges thought the student's dress was too low and in an effort to pull up the dress Bridges inadvertently touched the clothing covering her breast.  *Id.*

Hawco determined that the evidence against Bridges was inconclusive.  *Id.* at 8. However, in an abundance of caution, the principal, John Edwards[2], issued a written directive to Bridges.  Aff. of Edwards (Doc. 44-3 at 2).  Edwards's directive instructed Bridges to limit his conversations with students to professional matters and to avoid conversations with students about personal matters.  Doc. 44-3 at 2.

### b.  Pregnant Girlfriend Rumor

Plaintiff further claims that Edwards was aware of another incident of sexual misconduct on the part of Bridges.  Doc. 49 at 7.  About two years after the 1993 incidents, Edwards saw a young woman leaving the office at AHS in an agitated state.  Dep. of Edwards at 6.  A clerk in the office told Edwards that the woman was looking for Bridges. *Id.* at 7.  The clerk further stated that it was rumored that Bridges had impregnated the woman and that she had gone to Texas to get an abortion.  *Id.*  The clerk told Edwards that

---

[2]  John Edwards began his tenure as principle at AHS three days after these incidents were reported.

she did not have personal knowledge about the situation but that she had just overheard a

rumor.  Aff. of Edwards at 4.  Edwards stated that he never investigated Bridges's history

with this woman because it was a rumor, not a complaint, against Bridges.  Dep. of Edwards

at 10.  Additionally, Edwards did not know whether the incident took place when Bridges

was a student at AHS or when he was a teacher.  *Id.* at 8.  Edwards assumed that had the

incident happened while Bridges was a teacher that the principal at that time would have

looked into it.  *Id.* at 9.

### c.  2001 Incidents

For the school year 2001-2002, Bridges transferred from AHS to Ocoee Middle

School (OMS).  Dep. of Bridges at 18.  Bridges was an eighth grade administrator at OMS.

Over the course of working at OMS, Bridges was accused of acting improperly on two

different occasions.

First, a female administrator, Jeanette Brock, accused Bridges of making

inappropriate flirtatious comments to her, and, at one point, approaching her from behind

and pressed his body against her body as she was talking to a parent of a student.  Doc. 51-9

at 1-2.  Bridges denied these allegations.  Doc. 51-8 at 1.  Brock made it a point that she

wanted to handle the matter directly with Bridges herself.  Doc. 51-9 at 2.  She informed the

principal just in case the situation continued.  *Id.*  The principal of OMS, Katherine Clark,

found that Bridges had violated the Nondiscrimination, Equal Employment, and Affirmative

Action school board policy.  *Id.*  Clark issued Bridges a directive to refrain from such

behavior.

The second incident happened on December 21, 2001, when a female student accused Bridges of putting his hand inside of her blouse. Doc. 47-2 at 8. The ERD again sent John Hawco immediately to investigate. *Id.* Hawco alerted the Ocoee Police Department, who interviewed the complaining student and students who had information about the improper touching. *Id.* at 9. Bridges was relieved of duty until the investigation was concluded.[3] The complaining student alleged that Bridges had touched her shoulder and neck and reached into her shirt and touched her bra strap. *Id.* at 9-10.

A student who had alleged to have witnessed the incident told Hawco that she saw Bridges put his hand on the complaining student's neck but the witness did not see Bridges's hand go under the student's shirt. *Id.* at 10. Hawco positioned himself in the classroom where the witness had been seated. *Id.* Hawco determined that from the vantage point of the witness the witness could not have observed whether Bridges had actually placed his hand inside of the complaining student's shirt. *Id.* During his interviews with the students, no student told Hawco that Bridges touched the complaining student's breast. *Id.* at 11. Although Hawco determined that Bridges had used profanity in the classroom, he concluded that there was not enough proof to prove by a preponderance of the evidence that Bridges intentionally committed an act of sexual misconduct, which would have been grounds for terminating his employment. *Id.*

At the time of this incident the only courses of action against instructional personnel, in accordance with the collective bargaining agreement between OCSB and the Classroom

---

[3] December 21, 2001 was the last teacher work day before the winter holiday break. The next school date was January 7, 2002. Bridges was relieved of duty on January 7, 2002. Doc. 47-2 at 9.

Teacher's Association, were reprimand or termination.  It was determined that even with a lack of proof against Bridges, that he should still be reprimanded.  *Id.*

**B.  Procedural History**

Plaintiff originally brought suit, on October 18, 2004 against, Timothy Bridges, John Edwards, Orange County School Board (OCSB), Ronald Blocker, the Superintendent of OCSB, and Orange County Board of County Commissioners in the Ninth Judicial Circuit of and for Orange County.  Edwards, Blocker, and OCSB removed the claim to this Court on December 2, 2004.  On January 21, 2005, this Court remanded the counts of Plaintiff's First Amended Complaint based on Florida law- assault and battery, lewd and lascivious acts, civil theft, negligence, and negligent hiring, retention and supervision.  Doc. 21 at 1.  The Court also terminated Orange County Board of County Commissioners and Timothy Bridges as defendants before this Court.  *Id.* at 4.  Plaintiff settled her claims against John Edwards and Ronald Blocker on March 21, 2006.  Doc. 37. at 2.  On May 1, 2006, OCSB, the only remaining Defendant, filed for summary judgment.  On May 31, 2006, Plaintiff responded.

As part of her response Plaintiff filed two affidavits, one from the Plaintiff (Doc. 50-1), and one from a LaQueta Simpkins (Doc. 50-2).  On June 12, 2006, Defendant moved to strike these two affidavits.  Defendant argued that these affidavits do not meet the standards set forth in Fed. R. Civ. P. 56(e).  Doc. 56 at 2.  Defendant contended that the affidavits contain conclusory allegations and hearsay, which would not be admissible as evidence.  *Id.* Plaintiff responded by stating that these affidavits are neither hearsay nor conclusory allegations but instead based on personal knowledge.  Doc. 57 at 6.

-8-

## III.  STANDARD OF REVIEW

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). "The party seeking summary judgment bears the initial burden of identifying for the district court those portions of the record 'which it believes demonstrate the absence of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U. S. Steel & Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds,* 30 F.3d 1347 (11th Cir. 1994)).  "There is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor."  *Id.*  The Court considers the evidence and all inferences drawn therefrom in the light most favorable to the non-moving party.  *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

## IV.  ANALYSIS

### A.  Affidavits of LaQueta Simpkins and Delores Bailey

Defendant contends that the affidavits of LaQueta Simpkins and Plaintiff, both submitted in response to Defendant's motion for summary judgment, should be stricken. Affidavits can be submitted to rebuff summary judgment.  Fed. R. Civ. P. 56(e) in pertinent part reads:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . . When a motion for

summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by  affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial*.

Fed. R. Civ. P. 56(e) (emphasis added).  However, affidavits in opposition of summary judgment cannot be a sham.  *Van T. Junkins v. U.S. Indus.*, 736 F.2d 656, 657 (11th Cir. 1984).  A party cannot create a genuine issue of material fact by submitting an affidavit that contradicts deposition testimony of the affiant.  *See id.*

**1.  Affidavit of LaQueta Simpkins**

Defendant argues that Simpkins's affidavit is not relevant.  In her affidavit, Simpkins claims that she and Bridges had a sexual relationship while she was a student at AHS from 1991 to 1993.  Doc. 50-2 at 1.  She also states that she has personal knowledge that while she was involved with Bridges that Bridges was living with "another former [AHS] student by the name of Shannon Blackweather."  *Id.*  Defendant claims that this affidavit does not address the issues of this case.  Defendant also notes that it does not state the relevance of Bridges' relationship with Blackweather.  More importantly, Defendant argues, Simpkins does not state whether Defendant had notice about her relationship with Bridges.

Plaintiff alleges that Bridges is accused of having dated Blackweather while she was a student.  Doc. 57 at 4.  Plaintiff argues that Blackweather was Bridges rumored girlfriend who went to Texas to have an abortion.  *Id.*  Plaintiff also argues that Edwards, acting on behalf of the Defendant, should have looked into Bridges relationship with Blackweather. *Id.*  Plaintiff states that the affidavit makes no mention of these allegations about

Blackweather.  *Id.*  Plaintiff contends that the purpose of  this affidavit is to demonstrate that Bridges sexually abused a schoolchild under the age of eighteen.  *Id.* at 5.

This Court does not condone sexual acts against school children nor does the Court take such allegations lightly.  However,  the issue in the instant case is not whether Bridges had illicit relationships with school children, rather whether Defendant had notice of these relationships.  Simpkins's affidavit does not address the Defendant's knowledge of these relationships.  Additionally, whether or not Bridges had a relationship with Blackweather after she graduated from AHS is not relevant to the instant case.  The Court strikes this affidavit because it is not relevant in the Court's determination of whether Defendant had notice of Bridges's sexual relationships with students at AHS.  The affidavit does not set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e).

**2.  Affidavit of Delores Bailey**

Defendant argues that Plaintiff's affidavit is designed to mislead the Court.  Doc. 56 at 5.  Defendant specifically disputes paragraphs 11, 12, 13, 14, and 15.  The disputed paragraphs state:

11.     I had sexual relations with Timothy Bridges over one hundred times while I was under the age of 18 years and while a student at AHS.  Timothy Bridges and I had sex at various locations at AHS, including the classroom and Coach King's office, the Bridges Community Center, Timothy Bridges home, the home of Brian Pitts, in various motor vehicles, various hotels, my apartment in Tampa, and in public parks.

12.     I have personal knowledge that Brian Pitts, a teacher and coach at AHS, had actual and direct knowledge of sexual relationship between Timothy Bridges and myself in that I had sex with Timothy Bridges at Brian Pitt's home while Brian Pitts was present in the home.

13.     I also have personal knowledge that Brian Pitts was having a sexual relationship with Nadia Blackmon while Nadia Blackmon was a student at AHS and under the age of 18 years in that I would accompany Nadia Blackmon over to the home of Brian Pitts and while I was present in the home of Brian Pitts, Brian Pitts would engage in sexual relations with Nadia Blackmon in his home.

14.     On one occasion, Nadia Blackmon and I danced for Brian Pitts and Timothy Bridges and stripped our clothing off down to our underwear as we danced in the home of Brian Pitts for Timothy Bridges and Brian Pitts.

15.     Dorthea Eason, a teach at AHS, walked in on Timothy Bridges and I one afternoon in Timothy Bridges' classroom at AHS while I was giving Timothy Bridges oral sex after class had ended one afternoon.  The lights were turned off in the classroom and all of the students had left for the day.  Timothy Bridges was sitting down in his desk chair at his desk an I was kneeling down on my knees giving Timothy Bridges oral sex when Ms. Eason walked in to the classroom.

Doc. 50-3 at 2-3.  Defendant states Plaintiff tries to mislead the Court through paragraphs 11, 12, 13, and 14 by leading the Court to believe that Brian Pitts, a coach at AHS, had direct knowledge of Plaintiff's alleged relationship with Bridges while she was a student at AHS.  Doc. 56 at 5.  Plaintiff states that these paragraphs of the affidavit are based on personal knowledge.  Doc. 57 at 8.  Plaintiff states that the affidavit was meant to clarify any discrepancies from Plaintiff's three depositions.  *Id.*

The Court finds paragraph 11 to be misleading.  It gives a cumulative account of the sexual encounters Plaintiff had with Bridges in the first sentence, supposedly while Plaintiff was still a student and under the age of majority.  However, the Plaintiff then lists the different places that she and Bridges engaged in sexual activities.  But she lists places, specifically the home of Brian Pitts and Plaintiff's apartment in Tampa, where Plaintiff and

Bridges engaged in sexual activities after she had graduated from AHS.  Dep. of Bailey at 353-54, 465.

The Court also finds paragraph 12 to be misleading.  It states that Brian Pitts had knowledge that Plaintiff and Bridges were sexually active.  However, it does not say when Pitts became aware of their relationship.  In Plaintiff's deposition, she states that Pitts did not know about her sexual relationship with Bridges until after Plaintiff graduated AHS.  *Id.* at 269-71, 465.  Paragraph 11 in Plaintiff's affidavit does not demonstrate that Pitts had knowledge of the incident while Plaintiff was a student at AHS.

Paragraph 13 is irrelevant to Plaintiff's claims against Defendant.  Even if Pitts had a sexual relationship with Blackmon before Blackmon graduated, it is not relevant to Plaintiff's rights under §1983 and Title IX.  Plaintiff is not claiming that Defendant had notice of this relationship.

The Court concludes that Paragraph 14 is also misleading.  Plaintiff testified that this dancing incident took place after she and Blackmon had graduated.  *Id*. at 465.  By not giving a date in the affidavit, the paragraph gives the impression that this incident took place before Plaintiff graduated.

Paragraph 15 is also misleading.  The Plaintiff states that another teacher at AHS, Eason, walked in on Plaintiff and Bridges while they were engaged in sexual activity in Bridges's classroom at AHS.  Again this paragraph does not give a date.  Plaintiff never testified to having a sexual encounter with Bridges in his classroom while she was a student at AHS.  She did testify that she did not have sex with Bridges at AHS from December 2000, when the sexual encounters began, to May 2001.  *Id.* at 222.  She also testified that

she did not have any contact with Bridges during the summer of 2001.  *Id.*  Bridges was not

a teacher at AHS for Plaintiff's senior year of high school, 2001-2002 school year.  Dep. of

Bridges at 18.  Plaintiff did testify that she engaged in sexual activities with Bridges in his

classroom after she graduated AHS.  Dep. of Bailey at 264.  She also stated that she was not

aware of any employee of AHS or OCSB that knew about her relationship with Bridges

while she was a student at AHS.  *Id.* at 237.  Therefore, this alleged encounter had to have

taken place after Plaintiff graduated AHS.  The Court concludes that this paragraph of the

affidavit cannot lead to an inference, contrary to the weight of Plaintiff's three depositions,

that Eason had knowledge of Plaintiff and Bridges's relationship while Plaintiff was a

student at AHS.

 The Court strikes paragraphs 11 through 15.  Plaintiff states that the affidavit is an

attempt to clarify Plaintiff's three depositions.  In reality, these paragraphs are an attempt to

obfuscate the issue before this Court.  Timothy Bridges is no longer a defendant before this

Court.  Proving what Bridges did or did not do is not enough to create an issue in the instant

case.  Plaintiff has the burden to take it a step further and present evidence to this Court that

shows that Defendant had notice of Bridges's alleged misconduct.  These paragraphs are not

specific enough, specifically regarding dates, to set forth a genuine issue for trial.

## B.  Title IX Claim

 Title IX, as it relates to the instant case, states that "[n]o person ... shall, on the basis

of sex, be excluded from participation in, be denied the benefits of, or be subjected to

discrimination under any education program or activity receiving Federal financial

assistance."  20 U.S.C. § 1681(a).  There is an implicit private right of action through Title

IX for cases involving intentional sexual discrimination. *Sauls v. Pierce County Sch. Dist.*, 399 F.3d 1279, 1283 (11th Cir. 2005) (citing *Franklin v. Gwinnett County Pub. Schs.*, 503 U.S. 60, 65 (1992)).  Monetary damages are available in sexual discrimination cases under Title IX. *Id.* (citing *Franklin*, 503 U.S. at 75).  Sexual harassment of a student by a teacher constitutes actionable discrimination under Title IX. *Id.* (citing *Franklin*, 503 U.S. at 74-76).

A school district is not liable for damages under Title IX for teacher-on-student sexual abuse "'unless an official of the school district who at minimum has authority to institute corrective measures on the district's behalf has actual notice of, and is deliberately indifferent to, the teacher's misconduct.'" *Id*. (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998)).  The Supreme Court has defined deliberate indifference as "an official decision by the recipient [of federal financial assistance] not to remedy the violation." *Gebser*, 524 U.S. at 290.  In order to withstand summary judgment for a teacher-on-student sexual harassment claim a plaintiff must establish two things: "(1) a school district official with the authority to take corrective measures had actual notice of the harassment; and (2) the official with such notice was deliberately indifferent to the misconduct." *Sauls*, 399 F.3d at 1284.

The Court will first address who constitutes a supervisor with authority to remedy the misconduct in the instant case. Next the Court will address actual notice.  Finally, the Court will address deliberate indifference.

**1. Supervisor With Authority to Remedy the Misconduct**

Plaintiff must first show that an appropriate person has knowledge of the misconduct. *Gebser*, 524 U.S. at 290. An appropriate person is "an official who at minimum has authority to address the alleged discrimination and to institute corrective measures." *Id.* Plaintiff states that the following individuals had notice of Bridges and or a pattern of sexual abuse at AHS: "two principals, Edwards at AHS and Clark at OMS; three high school teachers Brian Pitts, Dorthea Eason, and Timothy Bridges; one middle school administrator, Jeanette Brock; one school board attorney, Frank Kruppenbacher; a school board administrator, Dr. Allen; and at least three high school students Delores Bailey, Nadia Blackmon, and LaQueta Simpkins." Doc. 49 at 18. Plaintiff does not state which of these individuals would constitute a supervisor with authority to remedy Bridges's misconduct. Plaintiff does note that the Eleventh Circuit considers the issue of whether notice to a teacher constitutes actual knowledge on the part of the school board to be an open question. *Id*. at16.

Defendant maintains that under state law it is the only agency responsible for hiring and firing any employee of the Orange County Public Schools. *See* Fl. Stat. 1012.33(6)(a). However, Blocker states that since at least 1999, the superintendent's office has propagated a directive providing that students should not be subjected to sexual abuse by any employee. Aff. of Blocker at 3. This directive requires that "any principal, administrator, or work location supervisor" who observes or receives a complaint that a student has been sexually abused must immediately notify the Employee Relations Department. *Id.*

The Plaintiff, asserting Eleventh Circuit case law, implies that teachers could be considered supervisors with the authority to remedy misconduct. However, the case

Plaintiff relies on, *Hawkins v. Sarasota County School Board*, 322 F.3d 1279 (11th Cir. 2003), is a student-on-student sexual harassment case, unlike the teacher-on-student situation in the instant case. *Id.* at 1280. In *Hawkins*, the court notes that with teacher-on-student abuse there are fewer and more identifiable number of school administrators who would qualify as an official with the authority to address the misconduct, whereas with student-on-student abuse it is possible that a greater number of administrators and school board employees could exert control over student behavior. *Id.* at 1287.

This Court notes that Plaintiff's claims that the students, Delores Bailey, Nadia Blackmon, and LaQueta Simpkins, who had notice of the sexual abuse, are not relevant. The students are not school district officials and Plaintiff is not alleging that the students contacted school district officials who had the authority to take corrective measures.

In the instant case, the question of who constitutes an official with authority to address the misconduct is an academic one. Even assuming that the principals, school administrators, and teachers all qualified as appropriate persons, Plaintiff fails to demonstrate, or even show that there is a genuine issue of material fact, that any of these individuals had actual notice of Plaintiff's relationship with Bridges.

**2.  Actual Notice**

"A school district must have actual notice before it can be held liable in damages for intentional discrimination base on sex." *Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1372 (11th Cir. 2000). An action for damages under Title IX will not lie on a theory of respondeat superior or constructive notice. *See Gerber*, 524 U.S. at 289. The parties agree that the first time Plaintiff told an official at AHS or administrator at OCSB about her sexual

relationship with Bridges was through her March 15, 2004 letter, which Defendant's personnel received on March 22, 2004.  Doc 58-1 at 5.  Defendant contends that it did not have actual notice of Bridges sexually abusing Plaintiff until it received her letter on March 22, 2004.  Aff. of Blocker at 6; Aff. of Edwards at 6.

Plaintiff alleges that Brian Pitts and Dr. Allen had actual notice of the relationship between Plaintiff and Bridges.  Doc. 49 at 17.  Pitts was a coach at AHS.  Plaintiff does not allege a date as to when Pitts gained actual knowledge of her relationship with Bridges. Plaintiff does testify that Brian Pitts did not know about her relationship with Bridges while she was a student at AHS.  Dep. of Bailey at 470.

Plaintiff states that she and a friend, Nadia Blackmon, went over to Pitts house one night when Bridges was there.  Pitts or Bridges made drinks for the girls, both of whom were under twenty-one, and the girls danced for them.  *Id.* at 469.  Plaintiff states that then she had sex with Bridges at Pitts's house while Pitts was in the house.  *Id.* at 464.  This incident took place in the summer.  Plaintiff is clear that the incident took place after she graduated.  *Id.* at 469.  However, she is unclear as to whether the incident took place in the summer of 2002, the summer immediately after she graduated, or the summer of 2003.  *Id.* at 468-69.  Plaintiff also testified that the first time Pitts gained his knowledge about her relationship with Bridges was in January 2003.  *Id.* at 269-70.  Plaintiff and Pitts had a conversation about her and Bridges at that time.  *Id.* at 270.

Whether Pitts first gained knowledge about Plaintiff's relationship with Bridges the summer after she graduated or, as she stated, January 2003 does not matter because either way Plaintiff was no longer a student at AHS.  Plaintiff does not state that Pitts gained

-18-

knowledge about the relationship as it existed when she was a student at AHS.  Plaintiff states that Pitts, either in the summer of 2002 or January, understood that Plaintiff was involved in an on-going relationship with Bridges.

Pitts's knowledge about Plaintiff's relationship with Bridges as it existed after she graduated is insufficient to prove actual notice of a violation of Title IX.  Once Plaintiff graduated from AHS her post graduation relationship with Bridges did not violate Title IX because she was no longer participating in the education program, classes at AHS, that was federal funded.

Plaintiff's claim that Allen knew about the relationship fails for the same reason. Bolden, Plaintiff's aunt and former employee of the Defendant, states that she was approached by Allen, an OCSB administrator, who, according to Bolden, asked  "I have heard something.  You heard what? I heard that Delores is having an affair with a teacher at Apoka High." Dep. of Bolden at 22; 69-70.  Although Bolden vacillates on exactly when this conversation took place she believed it to be sometime between December 2002 and August 2003.  Allen denies that she ever asked Bolden this question.  Dep. of Allen at 11, 13.  Assuming that this conversation took place, it happened after Plaintiff graduated and after Plaintiff turned eighteen.[4]  Allen's comment, as Bolden testified, referred to a present tense affair.  Bolden did not state that Allen asked her if Bolden knew that Plaintiff had a sexual relationship with Bridges while she was a student at AHS.

---

[4] Plaintiff's eighteenth birthday was August 29, 2002.  Dep. of Bailey at 254.

Plaintiff argues that if the jury believes Bolden then it could reasonably infer that Defendant had direct or implicit knowledge about the relationship before Plaintiff's letter was sent to Defendant.  Doc. 49 at 17.  Plaintiff further argues that a jury could reasonably believe that Defendant is lying about when it actually knew about the relationship.  *Id.*  The problem is that the Plaintiff is not alleging that the Defendant knew the relationship existed while Plaintiff was a student at AHS.  In fact, Plaintiff does not offer any proof that Defendant, through Dr. Allen, knew about the relationship before Plaintiff graduated.  Plaintiff's affair with Bridges post-graduation and after her eighteenth birthday, although immoral[5], was not a violation of Title IX.  Allen's alleged statement does not provide Defendant with actual notice.

Plaintiff also claims that Defendant had actual notice of Bridges's pattern of sexual abuse through Bridges's alleged affair with Shannon Blackweather.  Edwards stated that he saw a woman leaving the office at AHS in the early 1990s.  The woman had come in looking for Bridges.  Edwards was told that it was rumored that Bridges had impregnated this woman while she was student at AHS and that she had gone to Texas to get an abortion.  Plaintiff asserts that this woman was Shannon Blackweather.  Aff. of Simpkins at 1.

Plaintiff argues that Defendant, through Edwards, had actual notice that Bridges had an illicit sexual relationship with Blackweather while she was a student.  Edwards states that he heard a vague rumor about Blackweather and Bridges.  He was never presented with a complaint against Bridges about a relationship with Blackweather.  He stated that the

---

[5]The Court notes that Bridges was married with children at the time of the alleged affair.

woman he saw was in her late 20s or early 30s.  Dep. of Edwards at 13.  Edwards assumed

that any relationship between Blackweather and Bridges had taken place when Bridges was

a student at AHS.  *Id.* at 8-9.  Edwards assumed that had Bridges dated Blackweather while

she was a student and he was a teacher the principal at the time of the incident would have

investigated it.

Plaintiff offers no evidence, other than Edwards hearing this rumor, that Bridges

dated Blackweather while she was a student and he was a teacher.  Simpkins states that

Bridges lived with Blackweather after Blackweather had graduated high school.

Plaintiff has presented this Court with nothing more than idle office chatter that

would indicate there was an illicit sexual relationship between Bridges and Blackweather.

The Court agrees with Edwards in that the information with which he was presented was too

insubstantial to merit investigating.  in a school.  The rumor Edwards heard did not give him

or Defendant actual notice of Bridges's was engaged in a pattern of sexual abuse of students.


As a matter of law, allegations against Bridges by his coworker of improper flirtation

did not apprise Defendant of the possibility that Bridges sexually abused Plaintiff.  *See*

*Davis*, 223 F.3d 1373.  In that incident, Bridges was alleged to have flirted with a co-

worker, not a student.  Although his actions were inappropriate, flirting with a co-worker

does not put Defendant on notice that Bridges would sexually abuse children.  Likewise,

Hawco's determination that Bridges had used profanity in the classroom did not put

Defendant on notice of the possibility that Bridges sexually abused Plaintiff.  *Gebser*, 274

U.S. at 291 (noting that inappropriate comments in the classroom were insufficient to notify

the principal of the possibility that the teacher was involved in a sexual relationship with a student).

Even though Defendant knew about the incidents in 1993 and 2001, those incidents did not provide actual notice for the Defendant that Bridges had a pattern of sexual abuse. After thorough investigations no charges were brought against Bridges for any of the alleged incidents of misconduct by Bridges against students.  Even assuming that Defendant had actual notice about Bridges's illicit proclivities through the other claims against Bridges, the incidents in 1993 and 2001, Defendant "responded with anything but deliberate indifference."  *Davis*, 223 F.3d at 1373.

### 3.  Deliberate Indifference

The relevant question is not whether the school board was ultimately successful in preventing discrimination of its students, but whether the school board's response amounted to deliberate indifference.  *See Davis* at 1372.  Deliberate indifference equals "an official decision not to remedy the violation."  *Gebser*, 524 U.S. at 290.

On October 21, 1993, a student's mother called the principal's office of AHS alleging that Bridges had made a sexually graphic comment to her daughter and that he had touched another student's breast the prior school term.  Upon receiving this phone call, Defendant's personnel immediately sent out Hawco of the ERD to investigate the complaint.  Hawco informed both the state and local authorities about the allegations.  The day after the complaint was filed, Bridges was placed on administrative leave pending the outcome of the investigation.

Hawco conducted a full investigation- interviewing the parties involved and witnesses.  Since the results of his investigation were inconclusive, he could not prove by a preponderance of the evidence that Bridges had either made the sexually graphic comment or that he had intentionally touched the other student's breast.  Nonetheless, in an abundance of caution, Edwards, the principal, issued Bridges a directive, instructing him to keep his conversations with students professional and to avoid conversations with students of a personal matter.  As soon as it received a legitimate complaint, the Defendant responded with urgency and purpose.  The investigation was not deliberately indifferent but responsive and thorough.

The second incident happened on December 21, 2001, when a female student accused Bridges of putting his hand inside of her blouse.  Hawco was, again, sent to investigate.  Hawco informed the local authorities and Bridges was relieved from duty pending the outcome of the investigation.  Hawco interviewed the complaining student and another student who allegedly saw the incident.  During his interviews with the students, no student told Hawco that Bridges touched the complaining student's breast.  *Id.* at 11. Hawco determined that there was not enough evidence to prove by a preponderance of the evidence that Bridges intentionally committed an act of sexual misconduct, which would have been grounds for terminating his employment.  *Id.*

Since the only courses of action against instructional personnel, in accordance with the collective bargaining agreement between OCSB and the Classroom Teacher's Association, were a reprimand or termination, it was determined that Bridges's actions

merited a reprimand.  *Id.*  Again, Defendant responded to the accusations with purpose and speed.  Its investigation was thorough.  Defendant was not deliberately indifferent.

## C. §1983 Claim

Plaintiff is also seeking damages against OCSB under §1983.  To prove liability on the part of a municipality, in the instant case a school district, under §1983 a plaintiff must identify a policy or custom, propagated by the school district, that caused the plaintiff's rights to be violated.  *Davis v. DeKalb County Sch. Dist.*, 233 F.3d 1367, 1375 (11th Cir. 2000) (citing *Brown v. Board of County Comm'rs of Bryan County. v. Brown*, 520 U.S. 397, 403 (1997)).  A school district may not be held liable under §1983 on a theory of respondeat superior.  *Id.*  Additionally, it is not sufficient to just show conduct properly attributable to the school district.  *Id.*  A plaintiff must also demonstrate that the school district action "was taken with the requisite degree of culpability, i.e., that the [school district] action was taken with 'deliberate indifference' to its known or obvious consequences."  *Id.* (quoting *Brown*, 520 U.S. 397 at 407) (internal quotations omitted).  Therefore, where a plaintiff alleges, under §1983, that a school district is liable for failing to prevent a depravation of the plaintiff's federal rights a 'deliberate indifference' standard applies.  *Sauls*, 399 F.3d at 1288 (citing *Gebser*, 524 U.S. at 291; *Davis*, 233 F.3d at 1376).

The Plaintiff basically argues that Defendant knew about Bridges's pattern of sexual misconduct and failed to protect Plaintiff from Bridges.  As this Court has already stated in its discussion of Title IX, Plaintiff has not presented evidence that Defendant had notice of Plaintiff's relationship with Bridges while she was a student at AHS.  Additionally, as the

Court has stated herein, there is no evidence that Defendant was deliberately indifferent to the alleged misconduct by Bridges.

## V. CONCLUSION

Educators hold a trusted position in society.  They have the power to enlighten children, the power to prepare them for their futures.  Unfortunately, with that power comes an opportunity for abuse, an opportunity to mislead children.  If the allegations against Timothy Bridges are true then this Court has nothing but disdain for his actions.  However, this Court cannot let Bridges's actions cloud the issue in this case.  The issue is not whether Bridges had illicit or improper relationships with Plaintiff, or others, but whether Defendant had notice of these relationships.  If OCSB was without notice of Bridges behavior then OCSB was as helpless as the rest of the community to take steps to prevent Bridges from harming students further.  Therefore, based on the foregoing, it is **ORDERED** as follows:

1.  The Court **GRANTS** Defendant's, Orange County School Board, Motion for Summary Judgment (Doc. 43), filed May 1, 2006.

2.  The Court **GRANTS** Defendant's Motion to Strike (Doc. 56), filed June 12, 2006.

3.  The Clerk shall enter a final judgment providing that the Plaintiff, Delores Bailey, shall take nothing on her claims against the Defendant, Orange County School Board.  The judgment shall further provide that the Defendant shall recover its costs arising from this action.

4.  All other pending motions are **DENIED** as moot.

5.  The Clerk is directed to **CLOSE** the file.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on July 26, 2006.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record